UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HURSHELL L. STROUD JR.,

                 Plaintiff,

v.                                                                    Case No. 13-10334

                                        Hon. Patrick J. Duggan

BANK OF AMERICA, N.A.,
WELLS FARGO BANK, N.A., as trustee
for the MLMI Trust Series 2006-HE1, and
MLMI TRUST SERIES 2006-HE1,

                 Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

      Plaintiff Hurshell Stroud, Jr. commenced this action against Defendants

Bank of America, N.A. ("BANA"), Wells Fargo Bank, N.A. as Trustee for the

MLMI Trust Series 2006-HE1 ("Wells Fargo as Trustee"), and MLMI Trust Series

2006-HE1 ("the Trust") (collectively, "Defendants") in state court seeking to

redress alleged improprieties in the foreclosure of his home.  After removing the

action to this Court, Defendants filed a Motion to Dismiss Plaintiff's First

Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  This

motion is presently before the Court.  Having determined that oral argument would

not significantly aid the decisional process, the Court dispensed with oral argument

pursuant to Eastern District of Michigan Local Rule 7.1(f)(2). For the reasons
stated herein, the Court grants Defendants' Motion.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

On August 18, 2005, Plaintiff Hurshell Stroud, Jr. accepted a $165,000 loan
from First Street Financial, Inc. ("First Street"),[1] and, in exchange, executed a
promissory note secured by a mortgage on real property commonly known as
14514 Glastonbury, Detroit, Michigan (the "Property").  (Am. Compl. ¶ 9;
Mortgage, Am. Compl. Ex. A.)  Because the original mortgage was lost, it was
never recorded; however, a copy of the mortgage was recorded with the Wayne
County Register of Deeds on February 3, 2010, at Liber 48333, page 1281.  (Lost
Mortgage Aff., Am. Compl. Ex. A.)  On September 8, 2005, soon after completion
of the mortgage transaction, First Street assigned the loan to Wells Fargo as
Trustee (the "Assignment").  (Am. Compl. ¶ 22.)  As with the original mortgage,
the original assignment was lost before recording.  (*Id.* at ¶ 20.)  Therefore, a Lost
Assignment Affidavit was recorded with the Wayne County Register of Deeds on
February 9, 2010, at Liber 48343, page 290.  (*Id.* at ¶¶ 20, 22; Lost Assignment
Aff., Am. Compl. Ex. B.)  After the Mortgage was pooled into the Trust in 2005,
Wilshire Credit Corporation began servicing Plaintiff's loan.  (Am. Compl. ¶¶ 14-

---

[1] First Street has since dissolved.  (Am. Compl. ¶ 31.)

2

15.) Wilshire Credit Corporation merged into BAC Homes Loans Servicing, LP

("BAC") in February 2010, and, in 20011, BAC merged into BANA.  (*Id.* at ¶ 32.)

Sometime after entering into the loan transaction, Plaintiff began

experiencing economic hardship and inquired with BANA, which had become the

servicer of the loan, as to the possibility of a loan modification even though

Plaintiff was "current with his mortgage" at the time of this initial inquiry.  (*Id.* at

¶¶ 33-35.)  Plaintiff alleges that BANA "instructed" him to cease making mortgage

payments for three months so as to qualify for a loan modification.  (*Id.* at ¶ 36.)

Plaintiff's compliance with these instructions caused him to default on his loan,

but, per BANA's instructions, he called the bank after three months of non-

payment to once again request a loan modification.  (*Id.* at ¶ 37.)

Despite Plaintiff's compliance with and reliance on BANA's instructions,

Wells Fargo as Trustee did not allow Plaintiff "to participate in the Michigan

statutory modification process" but instead initiated foreclosure by advertisement

proceedings.  (*Id*. at ¶ 42.)  Plaintiff alleges that Wells Fargo as Trustee failed to

post the statutorily-required notice of foreclosure on the premises of the Property,

causing the foreclosure to proceed without Plaintiff's knowledge.[2]  (*Id.*)  A sheriff's

sale was held on August 24, 2011 at which Wells Fargo as Trustee purchased the

---

[2] Interestingly, this allegation is entirely untethered from the counts
contained in Plaintiff's Amended Complaint.  The Court notes, however, that the
Affidavit of Posting attached to the Sheriff's Deed belies the allegation.  (Aff. of
Posting attach. to Sheriff's Deed, Am. Compl. Ex. D.)

Property for $203,227.38.  (*Id.* at ¶ 43; Sheriff's Deed, Am. Compl. Ex. D.)  The

redemption period expired on February 24, 2012, with Plaintiff failing to redeem.

On December 7, 2012, Plaintiff initiated this action in the Circuit Court for

Wayne County in Wayne County, Michigan.[3]  (Compl. attach. Notice of Removal,

Ex. 1.)  Defendants removed the action to federal court on the basis of federal

question and diversity jurisdiction on January 28, 2013.  On April 25, 2013, after

what can only be described as procedural maneuvering by Plaintiff's counsel,[4]

Defendants filed a Motion to Dismiss Plaintiff's First Amended Complaint

pursuant to Federal Rule of Civil Procedure 12(b)(6).  Defendants' Motion, which

is presently before the Court, seeks dismissal of each of the following counts

contained in Plaintiff's Amended Complaint: (1) Count I - "Declaratory Relief that

the Foreclosure Violates [Michigan Compiled Laws §] 600.3204(1) & (3)"; (2)

Count II – "Foreclosure is in Violation of [Michigan Compiled Laws §§]

600.3204(4), 600.3205a, & 600.3205c"; (3) Count III – "Intentional Fraud"; (4)

Count IV – "Constructive Fraud"; (5) Count V – "Tortious Interference with

Contractual Relations"; (6) Count VI – "Civil Conspiracy"; and (7) Count VII –

"Michigan's Regulation of Collection Practices Act" ("RCPA").

---

[3] Case No. 12-016208-CH.

[4] Plaintiff filed a Motion to Remand on March 4, 2013, which the Court denied in an Opinion and Order dated June 17, 2013.  After Defendants filed a Motion to Dismiss on April 5, 2013, Plaintiff responded on April 8, 2013 by filing an Amended Complaint.

## II.    STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) allows the Court to make an assessment as to whether a plaintiff's pleadings have stated a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  Under the Supreme Court's articulation of the Rule 12(b)(6) standard in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555-56, 570, 127 S. Ct. 1955, 1964-65, 1974 (2007), the Court must construe the complaint in favor of the plaintiff and determine whether plaintiff's factual allegations present claims plausible on their face.  This standard requires a claimant to put forth "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" the requisite elements of their claims.  *Id.* at 557, 127 S. Ct. at 1965.  Even though the complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level."  *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965) (internal citations omitted); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]").

In determining whether a plaintiff has set forth a "claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949

(2009) (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974), courts must accept the factual allegations in the complaint as true, *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965.  This presumption, however, does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949.  Therefore, to survive a motion to dismiss, a plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters*, 502 F.3d at 548 (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65) (internal citations and quotations omitted).

Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of [a legal transgression], the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)) (internal citations omitted).  In conducting its analysis, the Court may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein. *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

### III.   ANALYSIS

Foreclosures by advertisement, such as the foreclosure at issue in this case, as well as the rights of both the mortgagor and mortgagee after the foreclosure sale has occurred, are governed by Michigan statutory law. *See, e.g.*, *Senters v. Ottawa Sav. Bank, FSB*, 443 Mich. 45, 50, 503 N.W.2d 639, 641 (1993); *Conlin v. Mortgage Elec. Registration Sys., Inc.*, 714 F.3d 355, 359 (6th Cir. 2013) (applying Michigan law) (citation omitted). Pursuant to Michigan law, a mortgagor has six months from the date of the sheriff's sale to redeem the property. Mich. Comp. Laws § 600.3240(8). If the mortgagor fails to redeem before the redemption period expires, the mortgagor's "right, title, and interest in and to the property" are extinguished, *Piotrowski v. State Land Office Bd.*, 302 Mich. 179, 4 N.W.2d 514, 517 (1942), and the sheriff's deed "become[s] operative, and [] vest[s] in the grantee named therein . . . all the right, title, and interest [] the mortgagor had[,]" Mich. Comp. Laws § 600.3236. This rule of law – holding that absolute title vests in the purchaser at the foreclosure sale upon expiration of the redemption period – has been applied consistently by state and federal courts alike to bar former owners from making any claims with respect to the foreclosed property after the statutory redemption period has lapsed.

There is, however, one caveat to the general rule described above. Once a foreclosure sale has taken place and the redemption period has run, a court may

allow "an equitable extension of the period to redeem" if a plaintiff makes "a clear showing of fraud, or irregularity[.]" *Schulthies v. Barron*, 16 Mich. App. 246, 247-48, 167 N.W.2d 784, 785 (1969); *see also Freeman v. Wozniak*, 241 Mich. App. 633, 637, 617 N.W.2d 46, 49 (2000) ("[I]n the absence of fraud, accident or mistake, the possibility of injustice is not enough to tamper with the strict statutory requirements.") (citing *Senters*, 443 Mich. at 55, 503 N.W.2d at 643).  Notably, the purported fraud or irregularity must relate to the foreclosure procedure.  *Reid v. Rylander*, 270 Mich. 263, 267, 258 N.W. 630, 631 (1935) (holding that only the foreclosure procedure may be challenged after a sale); *Freeman*, 241 Mich. App. at 636-38, 617 N.W.2d at 49 (reversal of sheriff's sale improper without fraud, accident, or mistake in foreclosure procedure).

Although the redemption period has expired in the instant case, Plaintiff asks the Court to rescind the sheriff's sale.  The posture of this case therefore requires that the Court assess whether Plaintiff's Complaint states a claim upon which relief may be granted within the fraud or irregularity framework outlined above.

## A.    Plaintiff's Allegations of Fraud

### 1.    *Counts III and IV– Intentional and Constructive Fraud*

Plaintiff's "Intentional Fraud" Count (Count III) alleges that "Defendants engaged in a conspiracy to intentionally defraud Plaintiff, with the specific goal of tricking him into foreclosure," so that Defendants "would obtain a windfall

profit[.]"  (Am. Compl. ¶ 92.)  The purported fraud began when "agents of [BANA] *knowingly and intentionally l[ied]* to Plaintiff, by making *knowingly bad faith instructions*."  (*Id.* at ¶ 93 (emphasis in original).)  These agents "falsely misrepresented to Plaintiff that he needed to default on his Mortgage in order to be reviewed for a loan modification."  (*Id.* at ¶ 94.)  "Defendants also made false representations to Plaintiff in Fraudulent Documents."  (*Id.* at ¶ 95.)

Count IV, "Constructive Fraud," is pled in the alternative to Count III and relies on the same alleged conduct.  (*Id.* at ¶ 104-05.)  The only difference is that "Defendants "made the [false] representations . . . without a purposeful design to defraud Plaintiff."  (*Id.* at ¶ 105.)  Under both theories, Plaintiff alleges that he relied on the fraudulent representations to his detriment because the representations induced Plaintiff to default on his Mortgage.  (*Id.* at ¶¶ 97-101, 106.)

In order to state a *prima facie* claim of fraud under Michigan law, "a plaintiff must establish that: (1) the defendant made a material representation; (2) the representation was false; (3) when the representation was made, the defendant knew that it was false, or made it recklessly, without knowledge of its truth, and as a positive assertion; (4) the defendant made it with the intention that the plaintiff should act upon it; (5) the plaintiff acted in reliance upon the representation; and (6) the plaintiff thereby suffered injury."  *Roberts v. Saffell*, 280 Mich. App. 397, 403, 760 N.W.2d 715, 719 (2008).  While fraud requires "intent to defraud,"

9

constructive fraud "only requires a misrepresentation which need not amount to a purposeful design to defraud." *Gen. Elec. Credit Corp. v. Wolverine Ins. Co.*, 420 Mich. 176, 188, 362 N.W.2d 595, 601 (1984).

Claims of fraudulent conduct must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To satisfy Rule 9(b), a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Frank v. Dana Corp.*, 547 F.3d 564, 569–70 (6th Cir. 2008) (internal quotation marks and citation omitted).

Plaintiff's Complaint falls woefully short of stating his fraud claims with particularity. Plaintiff does not allege who made the purportedly fraudulent statements, when they were made, or how or why the statements were fraudulent. Instead, the Complaint merely contains a formulaic recitation of the elements of fraud under Michigan law, without further facts to substantiate the claims.

### 2.   *Count VI – Civil Conspiracy*

"A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Admiral Ins. Co. v. Columbia*

10

*Cas. Ins. Co.*, 194 Mich. App. 300, 313, 486 N.W.2d 351, 358 (1992) (citations omitted). "[A] claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separate, actionable tort." *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 257 Mich. App. 365, 384, 670 N.W.2d 569, 580 (2003) (quotation omitted). As set forth in the preceding discussion, Plaintiff has failed to state an actionable tort premised on fraud. Furthermore, as discussed later in this Opinion and Order, Plaintiff has failed to state an actionable tort premised on intentional interference with contractual relations. Accordingly, the Court dismisses Count VI with prejudice.

**B.     Plaintiff's Allegations of Irregularity**

*1.     Count I – Challenges to the Foreclosure Pursuant to Michigan's Foreclosure by Advertisement Statute*

In Count I, entitled "Declaratory Relief that the Foreclosure Violates [Michigan Compiled Laws §] 600.3204(1) & (3)," Plaintiff seeks a temporary restraining order enjoining eviction proceedings "pending a hearing relative to Plaintiff's request for a Preliminary Injunction[,]"[5] asks this Court to aside the sheriff's sale and reinstate the loan, and to award Plaintiff fees and costs. (Am. Compl. 12.) In explaining why such relief is warranted, Plaintiff makes a bifurcated argument. First, Plaintiff alleges that Wells Fargo as Trustee "never

---

[5] The Court notes that no motion for preliminary injunction has been filed by Plaintiff nor does Plaintiff request such relief in the Complaint.

received" a valid assignment of the Mortgage or Note, and therefore lacked

authority to initiate foreclosure proceedings pursuant to Michigan Compiled Laws

§ 600.3204(1)(d).[6]  (Am. Compl. ¶ 60.)  The Assignment from First Financial to

Wells Fargo as Trustee was invalid because the failure to record the Assignment in

a timely fashion violated the terms of the Pooling and Servicing Agreement

governing relations between First Financial, BANA, Wells Fargo as Trustee, and

the Trust.  (Am. Compl. ¶¶ 69-70.)  In addition to violating the PSA, Plaintiff

contends that the Assignment is invalid because although the Corporation

Assignment of Deed of Trust indicates the Mortgage was assigned to Wells Fargo

as Trustee on September 8, 2005, (Am. Compl. Ex. B), it notes the instrument,

page, and book number where the Mortgage was recorded with the Wayne County

Register of Deeds, which was not actually recorded until February 3, 2010.  (Am.

Compl. ¶¶ 24-25.)  Because the recordation information could not possibly have

been known at the time the Mortgage was assigned to Wells Fargo as Trustee, the

Assignment was fraudulent and therefore invalid.  (*Id.* at ¶ 27.)  Plaintiff's second

argument is that because the Assignment was invalid, there is no record chain of

---

[6] Michigan Compiled Laws § 600.3204(1)(d) provides, in pertinent part:

> [A] party may foreclose a mortgage by advertisement if . . . [t]he party
> foreclosing the mortgage is either the owner of the indebtedness or of
> an interest in the indebtedness secured by the mortgage or the
> servicing agent of the mortgage.

title evidencing the assignment of the Mortgage as required by Michigan Compiled Laws § 600.3204(3).[7]

Defendants seek dismissal of Count I arguing that Plaintiff's "claims are contradicted by documents attached to Plaintiff's [Amended Complaint] and fail as a matter of law." (Def.'s Br. 6.) In light of case law holding that "a litigant who is not a party to an assignment lacks standing to challenge that assignment[,]" the Court agrees. *Livonia Props. Holdings, L.L.C. v. 12840-12976 Farmington Road Holdings, L.L.C.*, 717 F. Supp. 2d 724, 737 (E.D. Mich. 2010), *aff'd*, 399 F. App'x 97, 102 (6th Cir. 2010).

To the extent Plaintiff challenges the record chain of title on the basis that the defective assignment corrupted the chain of title and therefore deprived Wells as Trustee of statutory authority to foreclose the property, the Court finds the Sixth Circuit's opinion in *Livonia Properties* instructive. After preliminarily providing that Livonia had "presented no authority for the proposition that the record chain of title is destroyed by an irregularity affecting the validity of a transfer[,]" the Court explained that "[e]ven if the transfer were invalidated, the public record would remain as it is, and the record chain of title would not be disturbed." *Livonia*

---

[7] Michigan Compiled Laws § 600.3204(3) provides, in pertinent part, that:

If the party foreclosing a mortgage by advertisement is not the original mortgagee, a record chain of title shall exist prior to the date of sale under section 3216 evidencing the assignment of the mortgage to the party foreclosing the mortgage.

13

*Props.*, 399 F. App'x at 102.  While parties subject to foreclosure may "challenge whether a lender holds record chain of title, [] that determination is limited to an examination of the public records."  *Id.* at 103.  In other words, a party challenging the record chain of title may not "go beyond the statutory requirements to inspect every contract or agreement in the history of the loan."  *Id.* (internal quotation marks and citation omitted).

Here, the record chain of title as reflected in public records shows that First Financial's interest in the Property was assigned to Wells Fargo as Trustee.  (Lost Assignment Aff., Am. Compl. Ex. B (recorded on February 9, 2010).)  This chain of title existed "prior to the date of [the foreclosure] sale," as required by Michigan Compiled Laws § 600.3204(3). Thus, even if the Assignment were invalid, the record chain of title "would not be disturbed[,]" and therefore, would still reflect that Wells Fargo as Trustee was the mortgagee.  *Livonia Props.*, 399 F. App'x at 102; *see also Maraulo v. CitiMortgage, Inc.*, No. 12-10250, 2013 U.S. Dist. LEXIS 17727, at *21 (E.D. Mich. Feb. 11, 2013) (Goldsmith, J.) ("Because the record chain of title would not be disturbed even if the assignment were invalid, Plaintiffs['] challenge to the assignment on the grounds that it destroys the required chain of title lacks merit.").  As the mortgagee of record, Wells Fargo as Trustee possessed the requisite statutory authority to initiate foreclosure proceedings pursuant to Michigan Compiled Laws § 600.3204(1).

While Plaintiff has standing to challenge whether Defendants held record chain of title, Plaintiff "lacks standing to challenge that assignment." *Livonia Props.*, 399 F. App'x at 102; *see also Yuille v. Am. Home Mortgage Servs., Inc.*, 483 F. App'x 132, 135 (6th Cir. 2012) (explaining that the borrower, "as a stranger to the assignment, lacked standing to challenge [the] validity" of an assignment). This is particularly true where "any defect in the assignment of the mortgage would make no difference where both parties to the assignment ratified the assignment by their subsequent conduct in honoring its terms[.]" *Yuille*, 483 F. App'x at 135.  Plaintiff irrefutably mortgaged the property at issue to First Street, and, as provided in the Mortgage, to the successors and assigns of First Street. (Mortgage, Am. Compl. Ex. A.)  The Lost Assignment Affidavit and Corporation Assignment of Deed of Trust demonstrate that First Street subsequently assigned its rights in the Mortgage to Wells Fargo as Trustee.  (*Id.* Ex. B.)  Plaintiff was not a party to the Assignment and therefore lacks standing to challenge its validity unless an exception to the general rule precluding non-parties from challenging an assignment applies.

One exception to the general rule prohibiting non-parties to an assignment from challenging its validity exists when an obligor pleads facts indicating that the assignment may subject the obligor to the risk of having to pay the underlying debt twice. *Livonia Props.*, 399 F. App'x at 102.  Recognizing this exception, Plaintiff

alleges that he "fears double recovery[.]"  (Am. Compl. ¶ 61.)  Plaintiff does not

substantiate this fear by, for example, alleging that a second entity is attempting to

collect on the underlying debt.  That Plaintiff is fearful of double liability does not

make the risk of such liability plausible, particularly in light of Plaintiff's

acknowledgment that First Street (the original mortgagee) has dissolved and that

Wilshire Credit Corporation (the original loan servicer) has merged into BANA.

(*Id.* at ¶¶ 31-32.)

Because the Court concludes that Plaintiff does not have standing to

challenge the assignment, the Court does not reach the merits of the parties'

arguments regarding the validity or invalidity of the Assignment or whether an

assignment subjecting a mortgagor to double liability is sufficiently prejudicial to

permit a court to rescind a sheriff's sale once the redemption period has expired.

Accordingly, Count I of Plaintiff's Complaint is dismissed with prejudice.

**2.      *Challenges to the Foreclosure Based on Alleged Non-
         Compliance with Michigan's Loan Modification Statute***

In Count II, Plaintiff challenges the validity of the foreclosure alleging that

Defendants violated Michigan Compiled Laws §§ 600.3204(4), 600.3205a, and

600.3205c by: (1) failing to inform Plaintiff of his right to a pre-foreclosure

modification meeting; (2) failing to provide Plaintiff with a list of housing

counselors; and (3) failing to provide Plaintiff with documentation and eligibility

calculations with respect to whether Plaintiff qualified for a loan modification. (Am. Compl. ¶¶ 78-81.)

The first two allegations relating to defective notice are contradicted by an affidavit of Nakia Robinson, foreclosure counsel for Wells Fargo as Trustee.  This affidavit, included in the Sheriff's Deed attached to Plaintiff's Amended Complaint as Exhibit D, indicates that Defendants complied with Michigan Compiled Laws § 600.3205a(1)-(2) by sending a written notice of the foreclosure apprising Plaintiff of his right to request a modification meeting along with a list of housing counselors on February 12, 2010.  (Statement of Compliance at ¶ 6, attach. to Sheriff's Deed, Am. Compl. Ex. D.)  This affidavit is "presumptive evidence of the facts contained therein."  Mich. Comp. Laws § 600.3264.  In addition to being factually frivolous, Plaintiff's implicit suggestion that the notice defect complained of constitutes an irregularity sufficient to set aside the sheriff's sale is mistaken. *See, e.g.*, *Galati v. Wells Fargo Bank, N.A.*, No. 11-11487, 2011 U.S. Dist. LEXIS 126124, at *10-11 (E.D. Mich. Nov. 1, 2011) (Cohn, J.) (holding that failure to provide "notice of [the] right to request a modification meeting under Michigan Compiled Laws § 600.3205a(1)(b)" does not constitute a "sufficient irregularit[y] to void the foreclosure sale"); *Brezzell v. Bank of America, N.A.*, No. 11-11476, 2011 U.S. Dist. LEXIS 74291, at *15 (E.D. Mich. July 11, 2011) (Edmunds, J.)

17

("Even if Defendants violated [Michigan Compiled Laws § 600.3205a], that is not enough to set aside the foreclosure sale.").

Plaintiff's allegations that Defendants violated § 600.3205c because they never told Plaintiff whether he qualified for a modification and never provided him with the calculations made to determine his eligibility present a fundamental misunderstanding of Michigan's loan modification statute. Before any modification obligations are triggered, a borrower must first contact a housing counselor or the person designated by the mortgagee under § 600.3205a(1)(c) and must submit financial documents pursuant to § 600.3205b. Mich. Comp. Laws § 600.3205c(1)(c).

As indicated above, Defendants sent Plaintiff a letter informing him of his right to a loan modification meeting and providing contact information for approved housing counselors. Although Plaintiff failed to allege that he contacted a housing counselor, the Statement of Compliance indicates that Plaintiff did in fact do so but that he never provided "any of the financial documents necessary to determine if [he was] eligible for a modification[]" as required by Michigan Compiled Laws § 600.3205b(2). (Statement of Compliance at ¶ 8, attach. to Sheriff's Deed, Am. Compl. Ex. D.) Plaintiff does not allege that he submitted the required documentation; instead, Plaintiff merely asserts that he "qualified for a loan modification, and Defendants knew it, but Defendants did not want to modify

18

Plaintiff's loan, nor did Defendants wish to comply with their obligation under the law to conduct a lengthy and expensive judicial foreclosure." (Am. Compl. ¶ 84.) The Court does not comprehend, nor does Plaintiff explain, how Defendants could determine Plaintiff's eligibility for a modification without first receiving documentation pertinent to Plaintiff's finances.

Lastly, Michigan's foreclosure by advertisement statute does not provide for the relief requested by Plaintiff, which includes setting aside the sheriff's deed and reinstating the mortgage loan as well as an injunction preventing the sheriff's sale and damages. (*Id.* at 16; *id.* at ¶ 90.) The Court cannot enjoin a sheriff's sale that has already taken place. With respect to rescission, even if Defendants failed to comply with the loan modification statute in the ways alleged by Plaintiff, the loan modification statute contains an exclusive enforcement mechanism which allows a mortgagor to "request judicial foreclosure if the foreclosing party does not comply with the loan modification provisions." *Dingman v. OneWest Bank, FSB*, 859 F. Supp. 2d 912, 922 (E.D. Mich. 2012) (citing Mich. Comp. Laws § 600.3205c(8)). The statute's plain language "limits [Plaintiff's] relief . . . [because] it does not allow [] borrowers to avoid foreclosure altogether or set aside a completed foreclosure[,]" *Adams v. Wells Fargo Bank, N.A.*, No. 11-10150, 2011 U.S. Dist. LEXIS 90226, at *12 (E.D. Mich. Aug. 10, 2011) (Battani, J.), nor does it "give a plaintiff a cause of action for damages," *Dingman*, 859 F. Supp. 2d at 922. Thus,

in addition to failing to recognize that a completed occurrence cannot be enjoined, Plaintiff has failed to plead facts that would authorize the Court to set aside the foreclosure on the grounds of an irregularity or to award Plaintiff damages.

Accordingly, the Court dismisses Count II with prejudice.

### 3.     *Count V – Tortious Interference with Contractual Relations*

Plaintiff next alleges that Wells Fargo as Trustee tortiously interfered with the contract between Plaintiff and BANA by offering "both financial incentives and financial punishments to [BANA], in order to induce [BANA] to hurry up and breach the contract with the Plaintiff." (Am. Compl. ¶ 113.) Plaintiff contends that the purpose behind these acts was to collect federal bailout funds. (*Id.* at ¶¶ 112-13.)

To prevail on a claim for tortious interference with a contractual relationship, a plaintiff must prove: "(1) a contract; (2) a breach; and (3) instigation of the breach without justification by the defendant." *Servo Kinetics, Inc. v. Tokyo Precision Instruments, Co.*, 475 F.3d 783, 800 (6th Cir. 2007) (applying Michigan law) (quotation omitted). With respect to the third element, "a plaintiff must demonstrate, with specificity, affirmative acts by the interferer which corroborate the unlawful purpose of the interference." *Formall, Inc. v. Cmty. Nat'l. Bank of Pontiac*, 166 Mich. App. 772, 779, 421 N.W.2d 289, 292-93 (1988) (citation omitted). Of greatest consequence to the instant action, a plaintiff must also prove

20

"that the defendant was a 'third-party' to the contractual relationship." *Id.; see also Willis v. New World Van Lines, Inc.*, 123 F. Supp. 2d 380, 396 (E.D. Mich. 2000) ("[A] party cannot tortiously interfere with its own contract.").

Count V fails to state a claim for two reasons. First, although Plaintiff has identified the existence of a contract ("evidenced by the Mortgage and the Note" (Am. Compl. ¶ 110)), Plaintiff fails to indicate what contractual term, if any, was breached by BANA as a result of Wells Fargo as Trustee's purported "unjustified instigation[,]" *Mahrle v. Danke*, 216 Mich. App. 343, 350, 549 N.W.2d 56, 60 (1996). Second, Defendants were not third parties to the Mortgage or the Note. At the time Wells Fargo as Trustee foreclosed on the Mortgage, it owned both the Mortgage and the Note, and BANA was the servicing agent of the loan.

Because Plaintiff has failed to show an entitlement to relief, the Court dismisses Count V with prejudice.

**4.    *Count VII – Violation of Michigan's RCPA***

Plaintiff's final count alleges that Defendants violated Michigan's RCPA, Michigan Compiled Laws § 445.251, *et seq.*, which "prohibits abusive collection efforts . . . with respect to obligations arising out of a 'purchase made primarily for personal, family, or household purposes.'" *Levant v. Am. Honda Fin. Corp.*, 356 F. Supp. 2d 776, 782 (E.D. Mich. 2005) (quoting Mich. Comp. Laws § 445.251(a)).

21

Plaintiff alleges that Defendants have engaged in a number of violations of the statute, including "[c]ommunicating with Plaintiff in a misleading or deceptive manner[,]" "[m]aking an inaccurate, misleading, untrue or deceptive statement or claim in a communication to collect a debt[,]" "[m]isrepresenting in a communication . . . the legal status of a legal action being taken or . . . the legal rights of Defendants or Plaintiff[,]" "[c]ommunicating with Plaintiff without accurately disclosing the caller's identity[,]" "[u]sing harassing, oppressive, or abusive method to collect a debt[,]" and "[f]ailing to implement a procedure designed to prevent a violation by an employee." (Am. Compl. ¶ 123.) Defendants argue for dismissal on the ground that Plaintiff provided no "specific allegations regarding the alleged RCPA violations." (Defs.' Br. 16.) The Court agrees.

The allegations contained in Count VII merely parrot certain prohibited acts under the statute, *see* Michigan Compiled Laws § 445.252(a), (e), (f)(i)-(ii), (g), (n), and (q), and fail to provide any factual allegations to substantiate Plaintiff's claims.[8] As such, the Court dismisses Count VII with prejudice.

## IV.   CONCLUSION AND ORDER

---

[8] The Court notes that the factual allegations contained in paragraph fifty of Plaintiff's Amended Complaint, which clearly apply to the RCPA claim, also fail to provide factual enhancement. While some of the allegations are irrelevant to pleading a plausible RCPA claim, those that are relevant lack specificity. Plaintiff seems to acknowledge this by merely inserting the violations listed in the statute and providing that "the details" of these "numerous violations" "will be further fleshed out through discovery[.]" (Am. Compl. ¶ 50.)

For the reasons set forth above, the Court concludes that all seven Counts contained in Plaintiff's Amended Complaint fail to state a claim upon which relief can be granted.

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is **GRANTED** and Plaintiff's Amended Complaint is **DISMISSED WITH PREJUDICE**.


Date:  July 12, 2013

       s/PATRICK J. DUGGAN
       UNITED STATES DISTRICT JUDGE

Copies to:

**Nickolas C. Buonodono, Esq.**
**Samantha L. Walls, Esq.**
**T.L. Summerville, Esq.**